UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTINE M. ALLISON, | Case No. C09-5497RBL-KLS |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | Noted for September 17, 2010 |
| Defendant. | |

Plaintiff, Christine M. Allison, has brought this matter for judicial review of the denial by the Commissioner of Social Security (the "Commissioner") of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending for the reasons set forth below that the Commissioner's decision be reversed, and that this matter be remanded for payment of benefits.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 47 years old. Tr. 37. She has a high school education and past work experience as a deli worker and sales associate. Tr. 18, 26. On June 19, 2006, plaintiff filed an application for disability insurance benefits, alleging disability as of June 8, 2006, due to back problems, fibromyalgia, pain, arthritis, anxiety, and panic attacks. Tr. 8, 94, 113. Her application

REPORT AND RECOMMENDATION - 1

was denied initially and on reconsideration. Tr. 8, 34-37, 44, 50.

A hearing was held before an administrative law judge ("ALJ") on October 20, 2008, at which plaintiff, represented by counsel, appeared and testified. Tr. 23-33.  On December 2, 2008, the ALJ issued a decision, in which he determined plaintiff to be not disabled, finding specifically in relevant part:

(1)   at step one of the sequential disability evaluation process,[1] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)   at step two, plaintiff had "severe" impairments consisting of arthritic changes in the cervical and lumbar spine, fibromyalgia, a major depressive disorder, and an anxiety disorder;

(3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)   after step three but before step four, plaintiff had the residual functional capacity to perform sedentary work, with certain additional non-exertional limitations[2];

(5)   at step four, plaintiff was unable to perform her past relevant work; and

(6)   at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 8-22.  Plaintiff's request for review was denied by the Appeals Council on June 29, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 1; 20 C.F.R. § 404.98.

On August 14, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  The administrative record was filed with the Court on November 16, 2009. (Dkt. #12).  Plaintiff argues the ALJ's decision should be reversed and remanded to the

---

[1] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[2] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 2

Commissioner for an award of benefits, for the following reasons:

     (a)    the ALJ erred in evaluating the opinions of Janice Olson, M.D., Robert Ettlinger, M.D., and Cristina Casady;

     (b)    the ALJ erred in assessing plaintiff's credibility; and

     (c)    the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be reversed.  In addition, also for the reasons set forth below, the undersigned further recommends that this matter be remanded to the Commissioner for an award of benefits.  Although plaintiff has requested oral argument, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

     This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    The ALJ Erred in Rejecting the Opinions of Dr. Olson, Dr. Ettlinger and Ms. Casady

     The ALJ is responsible for determining credibility and resolving ambiguities and

REPORT AND RECOMMENDATION - 3

1    conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where

2    the medical evidence in the record is not conclusive, "questions of credibility and resolution of

3    conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir.

4    1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the</u>

5    <u>Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether

6    inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and

7    whether certain factors are relevant to discount" the opinions of medical experts "falls within this

8    responsibility." <u>Id.</u> at 603.

9

10       In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

11   "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this

12   "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

13   stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences

14   "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may

15   draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881

16   F.2d 747, 755, (9th Cir. 1989).

17

18       The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

19   opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.

20   1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

21   only be rejected for specific and legitimate reasons that are supported by substantial evidence in

22   the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or

23   her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

24   omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence

25   has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield</u>

26

REPORT AND RECOMMENDATION - 4

v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.      Dr. Olson

Plaintiff argues, and the undersigned agrees, that the ALJ erred in rejecting the opinions of one of his treating physicians, Janice Olson, M.D.  In regard to those opinions, the ALJ found in relevant part as follows:

> Dr. Olson submitted an assessment of the claimant's ability to work on April 2, 2008.  She opined, based on the claimant's, records, that the claimant had two separate but intertwined problems contributing to her alleged disability – fibromyalgia and back problems.  Dr. Olson also cited the claimant's depression as a result of her physical symptom as well as outside stressors. Dr. Olson stated that these factors, in combination, resulted in the claimant's inability to work, since June 2006.  Dr. Olson cited prior testing as well as tenderness in her spine.  The straight leg raising was limited to about 60 – 75 degrees.  She generally walked flexed at the waist and had difficulty standing straight.  According to Dr. Olson, based on the MRI testing and the examination, the claimant's symptoms would meet some parts of [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), §] 1.04A [(disorders of the spine)][3] but she did not have muscle wasting or reflex loss. Exhibits 37F/1-8.

---

[3] At step three of the sequential disability evaluation process, the claimant's impairments must be evaluated by the ALJ to see if they meet or medically equal the criteria of any impairments contained in the Listings. See Tackett v.

REPORT AND RECOMMENDATION - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

> I accord no weight to this opinion.  The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  Further, Dr. Olson opines that the claimant would "meet" some parts of [Listing] 1.04A; however, it [is] not clear that the doctor was familiar with the definition of the [L]isting contained in the Social Security Act and regulations.  As discussed earlier, the objective evidence does not show that the claimant has the strength loss, reflex loss or sensory loss that is required to meet medical listing 1.04A.  An administrative law judge may appropriately accord less weight to an opinion solicited in the litigation context by claimant's representative. . . . And this opinion is in direct contrast to Dr. Olson's comment that the etiology of claimant's pain was obscure.
>
> I further comment that the claimant's treating physician Dr. Olson opined in her treatment notes, from July 27, 2006 and August 30, 2006 that it was "obvious" to her that the claimant was unable to work because she could not "even maintain most of her activities of daily living or home duties" due to pain.  She considered the claimant's symptoms "disabling" and they precluded her ability to work. Exhibits 9F/2-3.  Again, these statements cannot be given much weight because Dr. Olson admitted that the etiology of the claimant's "pain" was unclear.  A treating physician's opinion based on uncritical acceptance of claimant's subjective complaints cannot properly be accorded significant weight under the Act and regulations and may properly be disregarded. . . .

17  Tr. 16-17.

18  As noted by plaintiff, the fact that Dr. Olson may not have been familiar with the criteria

19  set forth in Listing 1.04 (a finding the undersigned declines to make here, as there is no evidence

20  in the record to support it) is irrelevant to her overall opinion that plaintiff was unable to perform

21  "any meaningful work." Tr. 546.  As the ALJ himself notes, Dr. Olson noted that plaintiff did not

22  exhibit all of the criteria contained in that Listing, regardless of whether she fully understood the

23  definition thereof. See id.  In addition, Dr. Olson's opinion that she did not believe plaintiff was

24

25  able to perform any meaningful work, is a finding much more in line with that made at step four

26

Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R § 404.1520(d).  If any of the claimant's impairments meet or medically equal a Listing, he or she is deemed disabled. Id.

REPORT AND RECOMMENDATION - 6

and five of the sequential disability evaluation process than step three.

The undersigned further agrees with plaintiff that the ALJ improperly rejected the April 2, 2008 opinion of Dr. Olson on the basis that she appeared to rely "quite heavily" on plaintiff's own reports of her symptoms and limitations.  It is true that a physician's opinion premised to a large extent on a claimant's subjective complaints may be discounted, where the evidence in the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 601.  As discussed below, though, the ALJ did not properly discount plaintiff's credibility in this case.  Plaintiff, furthermore, correctly points out that Dr. Olson's April 2, 2008 opinion specifically references objective clinical findings in support of her opinion that plaintiff cannot work. See Tr. 545-46.

In addition, the record contains a number of treatment notes from Dr. Olson that contain similar findings. See Tr. 203, 209, 216-18, 222, 224, 235-36, 395, 399, 413, 418, 402-05, 409, 422, 427, 431, 438-39, 443, 447-48, 452, 455, 462, 467, 471, 478, 482-83.  Certainly, Dr. Olson relied to a fair extent on plaintiff's subjective complaints (see Tr. 545-46), but the fact is that Dr. Olson did also provide objective clinical findings to support her opinion.  Nor, as just discussed, does the fact that Dr. Olson may have relied on plaintiff's subjective complaints here – and even relied on them to a significant extent – constitute a valid basis for rejecting her opinion regarding plaintiff's ability to work, as the ALJ erred in discounting plaintiff's credibility.

The ALJ also erroneously rejected Dr. Olson's opinion on the basis that it was solicited in the context of litigation by plaintiff's counsel. See Tr. 16.  But it is clear that in the Ninth Circuit, absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. See Lester, 81 F.3d at 832 (examining physician's findings are entitled to no less weight when examination is procured by claimant than when it is obtained

REPORT AND RECOMMENDATION - 7

1  by Commissioner).  The ALJ has not pointed to, nor does the record show, any evidence of such

2  actual improprieties on the part of plaintiff's counsel or Dr. Olson.

3          In addition, to the extent the ALJ rejected Dr. Olson's opinions on the basis that he found

4  the etiology of plaintiff's pain to be obscure, the ALJ erred in that it is improper to "effectively"

5  require "'objective' evidence for a disease that eludes such measurement." Benecke v. Barnhart,

6  379 F.3d 587, 594 (9th Cir. 2004) (ALJ erred in discounting opinions of treating physicians by

7  relying on his own disbelief of claimant's symptom testimony and on his misunderstanding of

8  fibromyalgia).  None of the reasons the ALJ provided for rejecting the April 2, 2008 opinion of

9  Dr. Olson thus were proper.  As such, the ALJ erred in rejecting them.  As further pointed out by

10  plaintiff, the ALJ additionally erred by completely failing to mention, and thus properly consider,

11  the September 29, 2008 opinion of Dr. Olson, in which she opined that plaintiff was "unable [to]

12  perform reasonable continuous work activities," and would remain "at this level of disability" for

13  "at least a year." Tr. 540.

14          B.      Dr. Ettinger

15          Plaintiff also argues, and again the undersigned agrees, that the ALJ erred in rejecting the

16  opinion of Robert Ettlinger, M.D., with respect to which, the ALJ found in relevant part:

> Dr. Ettlinger, the claimant's treating rheumatologist . . . opined on August 25,
> 2006, that the claimant would be unable to work.  He stated that the claimant
> would be unable to carry out the duties of her jobs as a jewelry salesperson
> due to the difficulties from her fibromyalgia and low back pain, as indicated
> by his treatment notes.  Her impairments, according to Dr. Ettlinger, met the
> criteria established by the American College of Rheumatology. Exhibit 7F/2.
> Although Dr. Ettlinger's earlier treatment notes indicate some doubt regarding
> the diagnosis of her fibromyalgia symptoms and pain, I give some weight to
> this opinion in determining that the claimant cannot perform her prior work as
> a jewelry sales person.
>
> A more recent opinion was submitted by Dr. Ettlinger on March 24, 2008.
> Specifically, in a letter addressed to the claimant's attorney, he described the
> claimant's symptoms as consistent with fibromyalgia, in conjunction with a

REPORT AND RECOMMENDATION - 8

sleep disorder, chronic headaches and tender points.  According to Dr. Ettlinger, this met the criteria of fibromyalgia from the American College of Rheumatology.  He considered her back pain "largely mechanical."  A physical assessment was submitted along with his letter.  The claimant could sit for two hours at one time, stand for ½ hour and walk for only ¼ of an hour. She could only occasionally bend and kneel. Exhibits 35F/1 – 30.

I give some weight to this opinion as to the claimant's limitations.  I have incorporated some of these limits in the residual functional capacity, discussed above.

However, I accord no weight to the remainder of the opinion.  I find the recent opinion of Dr. Ettlinger's findings problematic.  First, he indicated in his first opinion that the claimant could not return to her position as a jewelry salesperson; however, he did not state all jobs would be precluded.  The fact that Dr. Ettlinger submitted a new opinion, only two years later, indicating that all work would be precluded, without any justification that showed deterioration in her condition, renders this opinion less persuasive.  Second, the nature of the letter, addressed to the claimant's attorney, questions whether this assessment is impartial or if it was instead generated to assist with the claimant's quest for benefits.  Lastly, the objective testing submitted, including MRIs, has not determined any etiology of the claimant's pain, as discussed throughout this decision.  The circumstances smack of accommodation and advocacy.  In the Ninth Circuit, the assumption of the role of advocate by a treating physician is one basis upon which such opinions may be rejected. . . .

Tr. 17-18.

The ALJ's evaluation of Dr. Ettlinger's opinions suffer from many of the same defects as does his evaluation of Dr. Olson's opinions.  For example, there is nothing in the record at all to indicate Dr. Ettlinger lacked impartiality in regard to his evaluation of plaintiff, or that he acted in a manner that amounted to "accommodation and advocacy."  In addition, as noted above, just because an evaluation is sought by the claimant, does not alone mean or indicate that the opinion provided is suspect.  Indeed, the Commissioner himself often sends claimants out for evaluations to further supplement the medical evidence in the record.  If the ALJ's position were to be taken seriously, those evaluation reports obtained by the Commissioner would be subject to the same level of suspicion.  The undersigned declines to do so here.

REPORT AND RECOMMENDATION - 9

The ALJ also rejected Dr. Ettlinger's opinions on the basis that Dr. Ettlinger's statement that plaintiff could not return to her prior job as a jewelry sales position, necessarily implied that he was not precluding her from performing other work.  But there simply is nothing in either of Dr. Ettlinger's opinions to support such an implication.  As such, the ALJ's statement that there was no justification for Dr. Ettlinger to submit another opinion two years later, in which plaintiff was found to be unable to perform any work, has no basis in the record.  Accordingly, as none of the reasons the ALJ provided for rejecting either of Dr. Ettlinger's opinions were proper, the ALJ wholly erred in rejecting them here as well.

C.    Ms. Casady

A physical capacity evaluation of plaintiff was performed by Christina Casady, OTR/L, M.Ed., in late August 2008, which the ALJ dealt with as follows:

> Recently, on August 22, 2008, a performance-based physical capacities evaluation was performed by Christina Cassady [sic], M.Ed.  Based on objective testing, Ms. Cassady [sic] opined that the claimant's work tolerances were consistent with sedentary work but on a less-than reasonably continuous basis.  Ms. Cassady [sic] stated the basis of her decision was the claimant's inability to sustain gainful vocational activity on a continuous basis.  This decision was based on the claimant's limited ability to sustain sitting, standing and walking as well as her poor body mechanics, posture and balance, performing only sedentary daily activities, diminished enjoyment of leisure activities, as well as the claimant's response to questions, behaviors during the evaluation and the need for daily narcotic use.  The physical capacities evaluation stated the claimant could only sit for ½ hour at a time, stand for one hour and walk for only seven minutes.  Also noted was the claimant's use of a walker and a cane. Exhibits 36F/1 – 2.

> I accord no weight to this opinion.  Although it appears that Ms. Cassady [sic] performed a physical evaluation, these findings exceed the objective evidence that shows the claimant is not as limited as she is alleging.  None of the underlying impairments described in this decision could reasonably cause these limitations.  Further, this opinion was solicited through the claimant's attorney in connection with an effort to generate evidence for the current appeal.  This evidence is certainly legitimate and deserves due consideration but the context in which it was produced cannot be entirely ignored.  In addition, the record does not contain evidence that the claimant's use of a

REPORT AND RECOMMENDATION - 10

walker and/or cane was medically necessary to ambulate and seems to be self-imposed.  In fact, as noted above, Dr. [Jens R.] Chapman[, M.D.,] specifically recommended that the claimant discontinue the use of assistive devices to improve her condition. Exhibit 30F/3.  This evaluation, as are all such evaluations, is a measure not necessarily of [the] claimant's maximum performance but rather of her performance measured by her effort.  The restrictions indicated in this document are no more binding on me than [the] claimant's own estimates of his abilities, given that I conclude that the claimant is not credible. . . .

Tr. 18; see also Tr. 518-38.  Once more, the undersigned agrees with plaintiff that the ALJ erred in rejecting the findings contained in Ms. Casady's evaluation report.

As discussed above, it is improper to effectively require clinical evidence for a medical condition that eludes such objective measurement, something the ALJ appears to essentially be doing here.  In addition, in stating that none of plaintiff's "underlying impairments" reasonably could have caused the limitations found by Ms. Casady, the ALJ not only ignores the evidence from plaintiff's treating physicians discussed above, but – in light of those opinions – appears as well to improperly be substituting his lay opinion therefor. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

Once again, furthermore, the ALJ makes the mistake of discounting the credibility of the opinion of a medical source[4] on the basis that it was procured by one side in the context of legal

---

[4] Evidence from "medical sources" other than "acceptable medical sources" is evidence the Commissioner considers when making a disability determination. See Social Security Ruling ("SSR") SSR 06-03p, 2006 WL 2329939 *3-*5; see also 20 C.F.R. § 404.1513(a), (d) (evidence from non-acceptable medical sources may be used to show severity of claimant's impairments and their effect on claimant's ability to work; licensed physicians and licensed or certified psychologists are acceptable medical sources).  Further, it should be noted that Dr. Olson stated in her April 2, 2008 opinion that she concurred with Ms. Casady's findings, thereby in effect adopting them as well. Tr. 540.

REPORT AND RECOMMENDATION - 11

proceedings, when there is no evidence of actual improprieties committed by either the attorney for plaintiff or by Ms. Casady.  The ALJ also erred in stating that there did not appear to be any medical necessity for plaintiff's use of an assistive walking device.  Although it is true that Dr. Chapman did recommend that plaintiff discontinue the use of the cane she was using at the time to "help her stand in an erect and upright posture," he went on to state that she "consider using walking sticks" instead for that purpose. Tr. 339.  Lastly, while it may be that a physical capacity evaluation is subject to a certain extent to the effort the individual being tested puts forth, in this case it was noted expressly by Ms. Casady that plaintiff gave "full effort" in terms of her "overall performance" (Tr. 519 (emphasis in original)), and, as discussed above, the ALJ's determination regarding plaintiff's credibility was erroneous in any event.

II.    The ALJ Improperly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and

REPORT AND RECOMMENDATION - 12

convincing." <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

The ALJ found plaintiff to be not fully credible, a finding plaintiff argues is not supported by the substantial evidence in the record.  The undersigned agrees the ALJ's overall credibility determination here was improper.  First, the ALJ found plaintiff's alleged pain complaints and fibromyalgia symptoms to be un supported by the objective medical evidence in the record. <u>See</u> Tr. 14.  A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998).  But, as discussed above, the ALJ erred in rejecting the medical evidence in the record supporting plaintiff's allegations of disabling symptoms and limitations, including the opinions of her treating physicians.  Accordingly, the ALJ's reliance on that evidence to find the opposite here was improper as well.

The ALJ next discounted plaintiff's credibility on the basis that the record contained "some indication" that her condition had improved. Tr. 14.  A claimant's credibility may be discounted on the basis of medical improvement. <u>See</u> <u>Morgan</u>, 169 F.3d at 599; <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).  While the record reveals there was improvement in plaintiff's pain and other physical symptoms at times, that improvement, as plaintiff points out, was fairly

REPORT AND RECOMMENDATION - 13

transient and thus did not last. <u>See,</u> Tr. 172, 175, 177-79, 185, 198, 200, 202-04, 208-09, 214-17, 219-20, 223, 316, 318, 320, 322, 342, 382-83, 391, 394-95, 398-99, 404-05, 409, 413-14, 417-18, 422-23, 426-27, 431-32, 438-39, 443, 447-48, 451-52, 455, 462, 467, 471, 477-78, 482-83, 490-91, 544, 546.  The record, therefore, does not definitively show that plaintiff's condition has consistently improved over time, let alone overall.

The ALJ also discounted plaintiff's credibility for the reason that although she had been provided with some treatment, "it was generally conservative in nature." Tr. 14; <u>see</u> <u>Meanal v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure of physician to prescribe, and claimant to request, serious medical treatment for supposedly excruciating pain); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).  The only treatment modality plaintiff appears not to have tried or that has not been prescribed, however, is surgical intervention, an option her medical providers indicated would not be effective. <u>See</u> Tr. 185, 199, 202, 204, 218, 339, 391, 395, 405, 438, 448, 471, 540, 544, 546.  The ALJ points to nothing in the record to establish that treatment was not recommended or pursued because plaintiff's reported pain and symptoms did not warrant it.  In other words, the treatment plaintiff received is not suggestive of a lower level of pain or functional limitation than is being claimed.  As such, here too the ALJ erred.

The ALJ discounted plaintiff's credibility as well on the basis that she was discouraged from using an assistive device by Dr. Chapman, and that her continued use of one indicated she had not followed medical advice and was exaggerating her symptoms. Tr. 15.  Failure to assert a good reason for not following a prescribed course of treatment, "can cast doubt on the sincerity of the claimant's pain testimony." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).  But, again,

REPORT AND RECOMMENDATION - 14

1    as discussed above, Dr. Chapman did not recommend that plaintiff discontinue using an assistive

2    device in general, but instead that she switch to a different one.   This reason, therefore, does not

3    constitute a proper basis for finding plaintiff less than fully credible.

4          The ALJ also discounted plaintiff's credibility for the following reasons:

> The claimant has further described daily activities which are not limited to the
> extent one would expect, given the complaints of disabling symptoms and
> limitations.  The claimant alleged to her primary care physician that she was
> unable to perform any housework, she had difficulty with driving and that she
> struggled to care for her toddler.  However, the claimant reported to Dr.
> [Heena] Desai[, M.D.,] that on a daily basis she was able to "play with her
> four year old daughter."  She did not indicate the need for any assistance with
> caring for her. Exhibits 9F/3, 11F/4.  The claimant also was able to participate
> in physical therapy, including pool exercises for thirty minutes. Exhibits 28F/3
> – 4.  In her adult function report, the claimant stated she could regularly take
> her medication, perform daily back treatments, watch the television, read, she
> was able to attend to her personal care unassisted, prepare simple meals and
> she could regularly leave her home. Exhibits 4E/1 – 4.  These activities do not
> reflect the disabling limitations alleged by the claimant. . . .

14    Tr. 15.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider

15    his or her daily activities. <u>Smolen</u>, 80 F.3d at 1284.  Such testimony may be rejected if the

16    claimant "is able to spend a substantial part of his or her day performing household chores or

17    other activities that are transferable to a work setting." <u>Id.</u> at 1284 n.7.  The claimant need not be

18    "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities

19    may not be easily transferable to a work environment." <u>Id.</u>

20          None of the activities the ALJ notes indicate an ability to spend the substantial part of her

21    day performing household chores, nor does the record bear this out, let alone demonstrate that

22    those activities are transferrable to a work setting. <u>See</u> Tr. 28-30, 120-27, 138, 150, 281.  Indeed,

23    the ability to take medication, participate in physical therapy and attend to one's personal care,

24    hardly establish an ability to function effectively in terms of performing work activities.  Nor is

25    there any indication as to the extent to which plaintiff was actually able to "play" with or care for

REPORT AND RECOMMENDATION - 15

her daughter.  In addition, the fact that plaintiff may not have reported any problems in this area

on one occasion, hardly indicates she in fact is capable of doing so.  "[D]isaility claimants should

not be penalized for attempting to lead normal lives in the face of their limitations," a recognition

clearly made by the Ninth Circuit, but not apparently by the ALJ in this case, <u>Reddick v. Chater</u>,

157 F.3d 715, 722 (9th Cir. 1998).

The ALJ did provide one valid basis for discounting plaintiff's credibility, which reads in

relevant part:

> Also significant, although the claimant alleged serious depressive symptoms,
> she did not seek any treatment for this outside of medication.  Dr. Desai
> during her assessment . . . opined that the claimant would "significantly"
> improve with treatment within a year if she were to receive the proper
> treatment from a specialist. Exhibit 11F/5.  It seems that the claimant's
> symptoms were treatable.  Also, Janice Schwartz, C.S.W. assessed, based on
> counseling sessions, that the claimant's GAF [global assessment of
> functioning] score ranged from 60, showing only moderate symptoms, to 75,
> indicating if symptoms were present, they were transient and expected
> responses to stressors. Exhibit 29F/12.  As recently as November 2007
> treatment notes from Dr. Olson stated the claimant's depression had
> "definitively" improved; Dr. Olson was unclear if it was the medication or if
> she was just getting more sleep.  The claimant reported that it was the first
> time in several months that she had felt this good. Exhibit 34F/18,  These
> examples show relatively mild symptoms that should not interfere with the
> claimant's ability to work.

Tr. 15.  The undersigned does find this to be a valid basis for discounting plaintiff's credibility in

regard to her alleged mental health symptoms, as evidence in the record shows those symptoms

largely improved over time. <u>See</u> Tr.203-04, 214, 278-79, 284-86, 328, 330, 335, 404-05, 409,

413-14, 418, 432, 439, 447-48, 478, 544.  This, though, has little bearing on plaintiff's credibility

regarding her subjective complaints, which, as discussed above, formed the primary basis for the

disability opinions issued by Dr. Ettlinger and Dr. Olson.  Further, where, as here, the substantial

evidence in the record does not support the ALJ's credibility determination overall, the mere fact

that one valid reason for finding the claimant not credible was provided, is insufficient to uphold

REPORT AND RECOMMENDATION - 16

1   that determination. See Tonapetyan, 242 F.3d at 1148.

2   III.    The ALJ Erred in Finding Plaintiff to Be Not Disabled

3          If a disability determination "cannot be made on the basis of medical factors alone at step

4   three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

5   restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

6   1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at

7   step four to determine whether he or she can do his or her past relevant work, and at step five to

8   determine whether he or she can do other work. Id.  It thus is what the claimant "can still do

9   despite his or her limitations." Id.

10         A claimant's residual functional capacity is the maximum amount of work the claimant is

11  able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's

12  inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the

13  ALJ must consider only those limitations and restrictions "attributable to medically determinable

14  impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

15  claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

16  accepted as consistent with the medical or other evidence." Id. at *7.

17         In this case, the ALJ assessed plaintiff with the residual functional capacity to perform

18  sedentary work with certain additional non-exertional limitations. Tr. 13.  As discussed above,

19  however, the ALJ erred in rejecting the opinions of Dr. Olson and Dr. Ettlinger, both of whom

20  opined that plaintiff was unable to perform any work.  In addition, none of the other acceptable

21  medical sources in the record have provided opinions regarding plaintiff's ability to perform the

22  physical demands of work that contradict those of Drs. Olson and Ettlinger.  As such, it cannot

23  be said that the ALJ's RFC assessment here is supported by substantial evidence.

REPORT AND RECOMMENDATION - 17

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).  The Grids may be used if they "completely and accurately represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original).  That is, the claimant "must be able to perform the full range of jobs in a given category." Id. (emphasis in the original).  If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate. Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

At step five in this case, the ALJ relied on the Grids and on his erroneous assessment of plaintiff's residual functional capacity to find her capable of performing other jobs existing in significant numbers in the national economy. See Tr. 19-21.  But again, as just discussed, the ALJ erred in finding plaintiff to be capable of performing sedentary work.  Thus, regardless of whether the ALJ was correct in relying on the Grids at step five of the sequential disability evaluation process – a finding the undersigned does not make here – he erred in determining her to be able to perform other jobs and thus in finding her to be not disabled, as the record does not support a finding that plaintiff is capable of performing sedentary work.

IV.    This Matter Should Be Remanded for an Award of Benefits

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

REPORT AND RECOMMENDATION - 18

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.  This is such a case.

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a

treating or examining physician," that opinion generally is credited "as a matter of law." Lester,

81 F.3d at 834 (citation omitted).  Where the ALJ is not required to find the claimant disabled on

crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the

Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th

Cir. 2003).  As discussed above, Dr. Olson and Dr. Ettlinger, both treating physicians, opined

that plaintiff was unable to perform any work, and Ms. Casady (with whom Dr. Olson agreed)

found plaintiff to be capable of performing sedentary work on a "less-than reasonably continuous

REPORT AND RECOMMENDATION - 19

basis."[5] Tr. 519.  In addition, no other acceptable medical source in the record has provided an

opinion regarding plaintiff's ability to perform the physical demands of work that contradict

those of these three medical sources.  Accordingly, their opinions and findings should be credited

as true.[6]  Crediting them as true, it is clear plaintiff should be found disabled and is entitled to an

award of benefits as a result thereof.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should find the ALJ improperly concluded

plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the

Commissioner for an award of benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

72(b), the parties shall have **fourteen (14) days** from service of this Report and

Recommendation to file written objections thereto.  <u>See also</u> Fed. R. Civ. P. 6.  Failure to file

objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474

U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is

directed set this matter for consideration on **September 17, 2010**, as noted in the caption.

DATED this 2nd day of September, 2010.

Karen L. Strombom
United States Magistrate Judge

---

[5] "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary
work setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent work
schedule." SSR 96-8p, 1996 WL 374184 *2 (emphasis in original).

[6] <u>See</u> <u>Schneider v. Barnhart</u>, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is
given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal
listed impairment).

REPORT AND RECOMMENDATION - 20